JANUARY TERM, 1884, No. 96.                    APRIL 29, 1884.

# Welliver's Appeal.

1. In an equity suit brought by *terre tenants* to restrain execution upon a judgment upon a mortgage, a decree was entered January 24, 1881, allowing the mortgagee to collect the amount found to be due him, with costs of suit, and " all costs of these proceedings in equity, excepting the costs incurred before the master by the taking of testimony in behalf of the defendants," which costs the defendants shall pay. The sheriff sold the mortgaged premises for a sum less than the amount found to be due to the mortgagee. On July 2, 1881, the court made a decree ordering that the defendants pay the master ten dollars and the plaintiffs pay him forty dollars. On July 9, 1881, in the absence of counsel for defendants, the court modified the decree of July 2 so " as to release the plaintiffs from paying any portion of the costs," and ordered the sheriff to pay the master forty dollars out of the sale of the real estate. To this order the sheriff made answer, setting out the sale and its proceeds. On October 13, 1883, the court decreed that the order or rule upon the sheriff of July 9, 1881, be discharged and annulled, that the plaintiffs pay the master forty dollars and all of the other costs, except the costs of witnesses examined upon the part of the defendants, and upon default awarded an attachment. *Held :* That the first decree was final and fixed the liability of the plaintiffs for the costs.

2. In the absence of an appeal, that decree could not be changed without the consent of the parties.

3. The decree of July 2, 1881, was entirely in harmony with and evidently intended to aid the former decree.

4. The decree of July 9, 1881, as a final decree, is insensible and might well be treated as a mere rule upon the sheriff.

5. The order to pay the costs out of the sale of the real estate was a mistake, and the costs of the equity suit could not be taxed in that case.

6. An attachment does not lie for costs.

Before GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.; MERCUR, C. J., and CLARK, J., absent.

Appeal of John N. Welliver and Sarah E. Welliver, his wife, and Jacob Brown from a decree of the Court of Common Pleas of *Clinton County,* imposing upon them the costs of an equity suit in which they were complainants.

Bill in equity between John N. Welliver and Sarah E. Welliver, his wife, in right of said wife and Jacob Brown, complainants, and Joseph Nesbit and John Candor, sheriff of Clinton county.

The bill set forth that on May 7, 1866, James W. Quiggle executed to L. A. Mackey a bond and mortgage for

the sum of $4,500; that Mackey subsequently assigned the mortgage to Joseph Nesbit; that Quiggle had paid various sums on the mortgage, so that it was reduced to a sum not exceeding $3,000; that Mrs. Sarah E. Welliver and Jacob Brown were at present the owners of parts of the mortgaged premises; that a *scire facias* had issued on the mortgage and Quiggle had confessed judgment on the *sci. fa.* for $6,075 and costs; that the plaintiffs had no notice of the *sci. fa.* and no opportunity to defend against the mortgage; that a *levari facias* had been issued on the judgment, and that the sheriff was about to sell the premises.

The bill prayed for an injunction to restrain the sale, and that the judgment be opened to permit the complainants to show the amount actually and legally due on the mortgage.

The defendants' answer admitted payments, and the master found that the amount due on the mortgage on January 1, 1881, was $2,563 76. The master, T. C. Hipple, reported that he could "see no reasons why Joseph Nesbit should not be allowed to collect out of the premises * * * the said sum of $2,563 76, with interest from January 1, 1881, and with costs of suit."

In accordance with the recommendation of the master, on January 24, 1881, the court, MAYER, P. J., decreed that the plaintiffs' bills in equity filed in said cause be dismissed; that the preliminary injunction be dissolved, and that the said Joseph Nesbit be allowed to collect out of the real estate of plaintiffs, by execution process, "the sum of two thousand five hundred and sixty-three and $\frac{76}{100}$th dollars, with costs of suit and all costs of these proceedings in equity, excepting the costs incurred before the master by the taking of testimony in behalf of the defendants, which costs the said Joseph Nesbit shall pay."

On April 16, 1881, the sheriff sold the mortgaged premises to Joseph Nesbit for $1,850, the costs of the sale being $50 93, leaving for distribution the sum of $1,799 07.

On July 2, 1881, the Court decreed "that Joseph Nesbit, one of the defendants, pay the master ten dollars, and that the plaintiffs pay the master forty dollars, as charged upon said report, within fifteen days."

On July 9, 1881, the Court, at the suggestion of the plaintiffs' counsel, and in the absence of Nesbit's counsel, and of the sheriff, modified the decree of July 2, as follows:

"July 9, 1881, the order of the Court of July 2, 1881,

is so far modified as to release the plaintiffs from paying any portion of the costs in this case, and it is hereby ordered that the sheriff pay T. C. Hipple, out of the sale of the real estate, forty dollars, and also pay the balance of the costs in this case."

To this order the sheriff made answer that he had sold the premises to Joseph Nesbit for $1,850; that the costs, amounting to $50 93, together with $2 50 the cost of the deed, had been placed in his hands by Nesbit, and that he had acknowledged, though not delivered, a deed to Nesbit.  He further suggested that by the report of the master there appeared to be due to Nesbit $2,563 76 with interest from January 1, 1881, and costs of the suit, "and after applying to said sum the said net amount arising from said sales of parcels 'A' and 'B,' there yet remains due and unpaid of said sum of $2,563 76 and interest, a balance of more than $800, and, therefore, it will result, if said order of your Honorable Court is not modified or changed, that Joseph Nesbit will be forced to personally pay the costs and $40, part of the master's fee, which he alleges and claims are to be paid by the plaintiffs in said bill in equity, and with the payment of which he has nothing to do.  Your respondent, therefore, prays your Honorable Court that if Joseph Nesbit has the right to receive a delivery of said deed on the payment of said $50 93 and costs of the deed, that said order may be done away with, and that an order of your Honorable Court be made authorizing your respondent to deliver to Joseph Nesbit said deed without any further payment than the $50 93 and $2 50 being made by him, or that your Honors grant such further relief, &c."

On October 13, 1883, ORVIS, P. J., of the Forty-ninth district, sitting specially, entered the following decree:

"And now, to wit: October 13, 1883, after argument and due consideration, it is ordered, adjudged, and decreed that the order of a rule upon R. S. Barker, late sheriff of Clinton county, to pay to T. C. Hipple, master, $40 of his fee, and the other costs in this case be discharged and annulled, and the said sheriff is hereby directed to deliver to Joseph Nesbit the sheriff's deed for the property sold upon his receipting for $1,799 07, the proceeds of the sale belonging to him as a lien creditor, if the same is not already receipted for, without further delay."

And it is further ordered that the plaintiffs in this case, viz: Jacob Brown, John N. Welliver, and Sarah E. Welliver, pay to T. C. Hipple, master, the balance of his fee as master, to wit: the sum of $40, and that they pay all

the other costs in this case, except the costs of the witnesses examined before the master on the part of the defendants, and that these costs be paid within thirty days from notice of this decree, and in default of such payment for thirty days, an attachment is awarded against said plaintiffs to enforce such payment." In the opinion accompanying this decree the Court said, *inter alia:* "This order, (July 9, 1881,) though purporting to be a peremptory order on the sheriff to pay $40 of the master's fee and costs in this equity suit out of the. proceeds of the sale of real estate having been made in the absence of and without notice to the sheriff, has ever since been very properly treated, both by the Court and the counsel for all parties, as merely a call upon the sheriff to show cause why he should not pay the amounts specified therein. Treating this as a rule to show cause, on August 27, 1881, R. S. Barker, Esq., high sheriff of the county, filed an answer. *    *    *    The order of July 9 goes further and says 'the order of the Court of July 2, 1881, is so far modified as to release the plaintiffs from paying any portion of the costs in this case.' This was certainly an inadvertence into which the Court was led by suggestions of counsel without having the record of the case before it. The order of July 2 was in the nature of an execution process at the instance of the master to enforce a part of the decree of January 24, 1881. That was a final decree, unreversed and. unappealed from. The order of July 9 does not purport to alter or amend it. No reasons have been given, and we can conceive of no good reason that could be assigned for altering or amending it. To change the decree now so as to provide that the defendant in this bill, Joseph Nesbit, shall pay all costs in the case, would be both illegal and inequitable."

The complainants appealed, assigning the following specifications of error:

*First.* The president judge of the Forty-ninth judicial district erred in this: that he assumed jurisdiction to review the proceedings, and dissolve and annul a final decree of the court of common pleas of Clinton county in equity to which no exceptions had been filed, and from which no appeal had been taken.

*Second.* The judge erred in this: that he made a personal decree against the plaintiffs, not justified by the finding of the master, whose said finding simply permitted the plaintiff in the *levari facias* to make the costs out of the property.

[Welliver's Appeal.]

*Third.* The judge erred in this : that he awarded an attachment against the plaintiffs in default of payment.

*W. C. Kress* for appellants.

The decree of July 9, 1881, is final and definitive, and the Court had no power to set it aside or annul it. "A decree in equity is as conclusive as a judgment at law :" Westcott *v.* Edmonds, 68 Pa., 34 ; Kelsey *v.* Murphy, 26 Pa., 78 ; Williams *v.* Row, 62 Pa., 118 ; Saylor *v.* Hicks, 36 Pa., 392.

The Court erred in awarding an attachment against the plaintiff in default of payment : *Ex rel.* Scott *v.* The Jailer, 1 Grant, 237 ; Lane *v.* Baker, 2 Grant, 424 ; Pierce *v.* Scott, 40 Leg. Intel., 320.

*C. G. Furst* for appellee.

June 9, 1884, the opinion of the Court was filed by PAXSON, J.:

This is a question of costs. We have no less than four decrees of the court below, from the last of which this appeal was taken.

The first decree was made January 24, 1881, and was a final decree in the cause. While it is not clearly expressed, it is yet evident that the plaintiffs' bill was dismissed, the injunction dissolved, and the costs of the suit in equity, "excepting the costs incurred before the master by the taking of testimony in behalf of the defendants," were imposed upon the plaintiff. That portion of the decree regarding the costs is obscure, but we think the meaning of the decree is to put the costs as above stated upon the plaintiff. It provides for collecting them out of his property, and although the decree could not be enforced as made ; that is to say; the costs in the suit in equity could not be taxed and collected in another and independent suit upon the mortgage, yet we are of opinion the liability of the plaintiff for the costs was fixed by this decree, and, as there was no appeal therefrom, we are unable to see how it could afterwards be changed without the consent of the parties.

Next came the decree of July 2, 1881, which provided merely for the payment of the master's fee of fifty dollars. Ten dollars thereof was ordered to be paid by Joseph Nesbit, one of the defendants, and the remaining forty dollars by the plaintiffs. This was in entire harmony with the decree of January 24, and was evidently in aid thereof.

Then we have the decree of July 9, 1881, which is called the "final decree as to costs." It provides that "the order of the court of July 2, 1881, is so far modified as to release the plaintiffs from paying any portion of the costs in this case, and it is hereby ordered that the sheriff pay T. C. Hipple, out of the sale of the real estate, forty dollars, and also to pay the balance of the costs in this case."

It was urged that this order was intended and treated as a rule upon the sheriff to show cause why the costs in the equity suit should not be paid out of the funds in his hands produced by the sale of the plaintiffs' real estate. There is some ground for this contention. The sheriff filed an answer, in which he set forth that he had no funds in his hands applicable to the costs; that the mortgaged premises sold for less than the mortgage debt, and that he had taken the receipt of the mortgage creditor for the amount of the bid, less the costs of the sale.

Thus the matter stood until October 13, 1883, when the Court, treating the order of July 9, 1881, as a rule upon the sheriff, discharged said rule, directed the sheriff to deliver to Joseph Nesbit the sheriff's deed for the property sold upon his receipting for $1,799 07, the proceeds of the sale belonging to him as a lien creditor, and that the plaintiffs pay the sum of forty dollars to the master as their proportion of the costs; that they pay all the other costs in the case, and that in default of such payment an attachment shall issue against said plaintiff to enforce payment of the sum.

It is obvious that this decree is in entire harmony with the final decree of the Court, made January 24, 1881, and, so far as it seeks the enforcement of that decree, is unobjectionable. Is the decree of July 9, 1881, in the way? We think not. We might well treat that order as the court below regarded it, as a mere rule upon the sheriff. As a final decree as to costs, it is insensible. It appears to release the plaintiffs from paying any portion of the costs, and yet it orders the costs to be paid out of the proceeds of the sale of the plaintiffs' real estate. This order, as well as the final decree of January 24, 1881, was evidently made by the Court under the belief that the sale of the mortgaged premises of the plaintiffs would produce sufficient funds to pay the debt, interest, and costs upon that writ, the costs of the sheriff's sale, and the costs in the equity suit. This, as we have said, was a mistake. As before observed, the costs in the equity suit could not be taxed in that case, and there was no

[Warder *et al. v.* Blair.]

fund to pay them. Upon whom, then, must the costs fall? Clearly upon the plaintiffs, whose bill was dismissed, and who were fixed for the costs by the decree of January 24, 1881.

Further, if we treat the order of July 9 as a decree as to costs, it will not avail, as it conflicts with the final decree of January 24. That decree was not appealed from. The order of July 2 was in the nature of execution process to enforce the decree of January 24. It does not purport to alter or amend it. That was a final and definitive decree, unreversed and unappealed. That portion of the order of July 9 which says: "The order of the court of July 2, 1881, is so far modified as to release the plaintiffs from paying any portion of the costs in the case," was evidently inadvertently made by the court below upon the suggestion of counsel, without having the record of the case before it. It was so stated by the learned judge below in his opinion.

Objection was made to that portion of the decree of October 13, 1883, which orders an attachment to go out, upon failure of the plaintiffs to pay the costs. As no attachment has in fact been issued, no harm has been done. It is proper to say, however, that an attachment will not lie for costs: Pierce *v.* Scott, Legal Int., Vol. 40, p. 320.

The decree is affirmed and the appeal dismissed at the costs of the appellants.